GEORGE E. HODGE, Executor, etc., Appellant, *v.* ELLEN L. HOPPOCK, Executrix, etc., Respondent.

A brother of E. insured his life for her benefit, upon his death the insurance money was paid to her father who credited it to her private account. The brother was, at the time of his death, indebted to the father, and upon a subsequent statement by E. that she intended the money to go to pay such indebtedness, the father caused the credit of said money to be transferred from the account of E. to that of the brother. After the transfer E. was furnished with her account, her attention was called to the transfer which she said was correct. She settled the account paying a small balance due thereon and receiving a receipt. In an action by the executor of E. to recover of her father's estate the amount of the insurance money, *held*, that the effect of the transactions between E. and her father was to divest her of any claim against him for or on account of said money, that it was an effectual appropriation by her of her money in payment of so much of her brother's indebtedness ; that, as it was not a gift or intended as such, the law as to gifts *inter vivos* had no application.

(Argued December 9, 1878 ; decided December 17, 1878.)

APPEAL from judgment of the General Term of the

Supreme Court, in the second judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee.

This was a reference, under the statute, of a claim for moneys alleged to have been collected by defendant's testator for the use and benefit of plaintiff's testatrix.

On June 11, 1864, The Equitable Life Assurance Society of the United States, issued a policy upon the life of Edward A. Hoppock for $10,000, payable to his sisters Emma, plaintiff's testatrix, and Elizabeth Hoppock, and intended by him as a gift to them. His sister Elizabeth died intestate and unmarried before the death of Edward; he died October 5, 1871, intestate and unmarried, leaving him surviving his father Moses A. Hoppock, defendant's testator, his sister Emma, and several other brothers and sisters. At the time of Edward's death he owed his father over $10,000, and his father was responsible for a debt of his of $15,000.

The further facts appear in the opinion.

*John S. Woodward*, for appellant. A debt cannot be transformed into a gift by a mere parol declaration subsequent to its creation. (*Gray* v. *Barton*, 55 N. Y., 68, 72, 73; *Doty* v. *Willson*, 47 id., 580; *Shuttleworth* v. *Winter*, 55 id., 624; *Walter* v. *Hodge*, 2 Swanst., 97.) The doctrine of estoppel has no application to this case.) (*Sanford*, v. *Sanford*, 58 N. Y., 69; *Barnard* v. *Campbell*, 55 id., 456; *Dyer* v. *Pearson*, 3 B. & C., 38; *Newton* v. *Thornton*, 6 East, 17; *Dayton* v. *Kinne*, 3 B. & A., 320; *Ballard* v. *Burgett*, 40 N. Y., 314; *Pickering* v. *Busk*, 15 East, 38; *Weaver* v. *Barden*, 49 N. Y., 286; *McGoldrich* v. *Willetts*, 52 id., 612; *City Bank* v. *R., W. and O. R. Co.*, 44 id., 136; *Salters* v. *Everett*, 20 Wend., 267; *Wooster* v. *Sherwood*, 25 N. Y., 278; *Brower* v. *Peabody*, 3 Kernan, 121.) Equity will not aid or enforce a mere voluntary agreement, not valid at law, especially against a legal claim for a just debt and when there is no consideration, accident or fraud. (*Minturn* v. *Seymour*, 4 Johns. Ch. R., 497.)

*Jno. E. Parsons*, for respondent. The money having been transferred and the debt paid by direction of plaintiff's testatrix there remained no right in her or her representatives to vary her direction. (*Gibson* v. *Mirrit*, R. & M., 68, 71 [2 Bing.], 7; *Hodgson* v. *Anderson*, 3 B. & C., 842; *Walker* v. *Rastron*, 9 M. & W., 411; *Tenant* v. *Elliot*, 1 Bos. & P., 3; *Farmer* v. *Russel*, id., 296; *Delaware and Hudson Canal Co.* v. *Westchester Co. Bk.*, 4 Denio, 97; *Berry* v. *Mayhew*, 1 Daly, 54; *Judson* v. *Gray*, 17 How. Pr. R., 289; *Weston* v. *Barker*, 12 J. R., 276; *Pooley* v. *Goodwin*, 4 A. & E., 94; *Lilley* v. *Hayes*, 5 id., 548.) A gift is not revocable at pleasure. (*Bedell* v. *Carll*, 33 N. Y., 584; 2 Kent's Com. [10th ed.], 591; *Freeman* v. *Freeman*, 51 Barb., 311.)

EARL, J. The only question we deem it important to consider, is whether or not plaintiff's testatrix had before her death divested herself of the right to claim the money involved in this controversy. If she had, it is an answer to this action, and the other questions discussed upon the argument before us become unimportant.

On the 27th day of October, 1871, by the consent of the testatrix, the insurance money was paid to her father, defendant's testator. He received it, and upon his account books credited it to the private account of the testatrix, and such credit remained until July 31, 1872. About the first day of that month the testatrix told her father that she intended the insurance money should go to pay the indebtedness of her brother Edward. After that on the thirty-first day of the month, her father caused the amount of the insurance money to be transferred, from her account on his books, to the account of Edward upon the same books. We may infer that this was done by charging the same in her account, and crediting it in the account of Edward, who was then indebted to his father in a greater sum. After this was done her account showed her to be indebted to her father in the sum of $48.94. She was furnished with this account

showing this balance ; and on the 14th day of September, 1872, she called at her father's office to settle her private account with him, and expressed to his book-keeper a desire to pay such balance. He asked her if the account was correct, and she said it was so far as she had examined it. The book-keeper then referred to the insurance money, and stated that it had been transferred by instruction of her father, with her consent, as he understood it, to the account of her brother Edward, and she replied that " that was in accordance with her wishes." She paid the balance and the book-keeper gave her a receipt.

We think the legal effect of these transactions was to divest her of any claim against her father for or on account of this money. If she had simply promised orally to pay her brother's indebtedness to her father, it would have been without consideration, and void under the statute of frauds. If she had promised that her father could apply the money in his hands upon his debt against her brother, she could for the same reason have revoked the promise at any time before the application was effectually made. But she had the right to pay her brother's indebtedness, and if she had taken the money from her father and then paid it to him to apply upon such indebtedness, she could not have reclaimed it. If the transaction had taken that form, the entries upon the account books would have been substantially the same. Theoretically the money was paid to her, and then charged to her, and then paid by her to her father and credited to her brother. That is the legal effect of the transaction. The money being in his hands, the transaction could not well take any other form. It was charged to her account, and that was balanced and settled, and it was credited to her brother, and all this she sanctioned, and therefore may be treated as having caused to be done. After this was done, the intention of the parties was fully executed ; nothing more remained to be done, and she could not revoke the appropriation of her money to pay her brother's debt. The fact that Edward was dead does not affect this result. Whether he died solvent or insolvent

(and which we do not know), the appropriation went to the benefit of his estate.

This was not a gift of her money to her father, and was not intended to be. And hence the law as to gifts *inter vivos*, has no bearing upon this case. It was an effectual appropriation of her money to pay her brother's debt, and as such must be upheld.

The judgment must be affirmed, with costs.

All concur, except ANDREWS and HAND, JJ., not voting.

Judgment affirmed.